FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 09, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARREN S.,[1] <br>          Plaintiff, <br><br> vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>          Defendant. | No. 2:20-cv-00110-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 19, 20 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 19, and grants Defendant's motion, ECF No. 20.

3  **JURISDICTION**

4  The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

5  **STANDARD OF REVIEW**

6  A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation. *Id.*

17  In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 17, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of September 21, 2015.[2] Tr. 16, 69,

---

[2] Plaintiff previously applied for supplemental security income, which resulted in a favorable decision; Plaintiff was found disabled as of February 27, 2003 and received benefits through 2011, when he reports his benefits ceased because his family's income exceeded the income limit, rendering him financially ineligible for benefits. Tr. 16. Disability Determination Services indicated Plaintiff appeared for a hearing in 2005 when he was awarded benefits, and his benefits were terminated when he went to prison, Tr. 98, although Plaintiff reports he has never been to prison, Tr. 39. The prior claim's file has since been destroyed. Tr. 98. Plaintiff again applied for benefits December 12, 2014, which was denied July 15, 2015; Plaintiff did not appeal the denial. Tr. 57-68, 71.

ORDER - 6

165-76.  The application was denied initially, and on reconsideration. Tr. 100-03; Tr. 106-08.  Plaintiff appeared before an administrative law judge (ALJ) on January 17, 2019.  Tr. 32-55.  On February 8, 2019, the ALJ denied Plaintiff's claim.  Tr. 13-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 17, 2016.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments:  lumbar spine degenerative disc disease, cervical spine degenerative disc disease, history of laparoscopic hernia repair, and personality disorder traits (including narcissistic personality disorder).  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for six hours; sit for six hours in an eight-hour workday, with normal breaks; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently stoop and kneel; must avoid concentrated exposure to extreme cold; can have no contact with the general public; and no more than occasional contact with co-workers and supervisors.

Tr. 20.

ORDER - 7

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 25.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as mailroom clerk, courier, and small parts assembler.  Tr. 26.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  *Id.*

On January 22, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly considered *res judicata*;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-three analysis;

4.  Whether the ALJ properly evaluated lay witness evidence;

5.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

6.  Whether the ALJ conducted a proper step-five analysis.

ORDER - 8

ECF No. 19 at 2.

## DISCUSSION

### A. Res Judicata

Plaintiff contends the ALJ erred by not giving any res judicata effect to his prior disability finding.  ECF No. 19 at 9-10.  "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Secy of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Under the doctrine of res judicata, a prior, final determination of nondisability bars relitigation of that claim through the date of the prior decision.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).  Furthermore, in the Ninth Circuit, a prior, final determination of nondisability "create[s] a presumption that [the claimant] continued to be able to work after that date."  *Id*. (citation and internal quotation marks omitted).[3]  While a previous ALJ's findings

_____

[3] Acquiescence Ruling (AR) 97-4(9) explains how *Chavez* differs from the Social Security Administration's (SSA) interpretation of Social Security policy requiring de novo review of claims for unadjudicated periods.  The SSA applies the *Chavez* presumption only as to claimants residing in the Ninth Circuit.  AR 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 9

concerning a claimant's RFC are entitled to some res judicata consideration, the

findings can be reconsidered by a subsequent judge upon showing of new

information that was not presented to the first judge. *Stubbs-Danielson v. Astrue*,

539 F.3d 1169, 1173 (9th Cir. 2008) (citing *Chavez*, 844 F.2d at 694).  However,

the adjudicator is not required to presume that a prior disability has continued

through a non-medically related termination of benefits. *Stubbs-Danielson,* 539

F.3d at 1172 (citing *Warren v. Bowen,* 807 F.2d 1120 (9th Cir. 1987) (per

curiam)).  In *Stubbs-Danielson,* the plaintiff received benefits until she was

incarcerated in 1994, which resulted in her benefits being terminated; the plaintiff

reapplied for benefits in 2002, after she was released. *Stubbs-Danielson,* 539 F.3d

at 1171.  The Ninth Circuit held there was no basis for applying a presumption of

disability where a claimant's reapplication came six years after termination of

benefits and more than 15 years after the prior successful application. *Id.* at 1173.

Here, Plaintiff was previously awarded benefits in 2005 and his benefits

were terminated in 2011.  Tr. 16, 255.  Plaintiff's timeline is similar to the timeline

in *Stubbs-Danielson,* as Plaintiff's current application was filed 11 years after his

prior successful application and five years after his benefits were terminated.  All

of the medical evidence in the file relates to the time period after Plaintiff's

benefits were terminated.  While Plaintiff argues the 2005 decision awarding

benefits should be given res judicata consideration, Plaintiff re-applied for benefits,

ORDER - 10

1  which was denied on July 15, 2015.  Tr. 57-68.  Plaintiff did not appeal the denial.

2  Res judicata may apply to initial denials where the plaintiff failed to pursue an

3  appeal and failed to present new facts in the subsequent application that

4  demonstrate the prior denial may have been unsupported.  *Thompson v.*

5  *Schweiker,* 665 F.2d 936, 940 (9th Cir.1982); POMS GN 03101.160.  Plaintiff does

6  not present any arguments as to why the 2015 denial should not be given res

7  judicata consideration rather than the prior ALJ decision.  Like *Stubbs-Danielson,*

8  Plaintiff has not established that the ALJ improperly reconsidered prior findings.

9  Further, the new evidence presented new and material information not presented to

10  the first adjudicator.  Plaintiff is not entitled to remand on these grounds.

11  **B.  Medical opinion Evidence**

12  　　　Plaintiff contends the ALJ erred in considering the opinion of Brent Packer,

13  M.D.  ECF No. 19 at 10.

14  　　　There are three types of physicians: "(1) those who treat the claimant

15  (treating physicians); (2) those who examine but do not treat the claimant

16  (examining physicians); and (3) those who neither examine nor treat the claimant

17  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

18  *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

19  Generally, a treating physician's opinion carries more weight than an examining

20  physician's, and an examining physician's opinion carries more weight than a

ORDER - 11

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff contends the ALJ failed to consider a September 19, 2016 opinion by Dr. Packer.  ECF No. 19 at 10.  Specifically, Plaintiff asserts that "the record shows that on September 19, 2016, examining physician Brent Packer, MD, found

1  that [Plaintiff]'s physical impairments confirmed by imaging would 'support a

2  sedentary RFC rating' ".  *Id.*  In support, Plaintiff cites to the disability

3  determination explanations, which contain a section that outline the medical

4  opinions contained in the medical records.  ECF No. 19 at 10 (citing Tr. 77, 93).

5  The explanations state that on September 19, 2016, Dr. Packer opined that

6  Plaintiff's physical impairments, supported by imaging, would "support a

7  sedentary RFC rating."  *Id.*  The disability analysts indicated Dr. Packer's opinion

8  was given other weight because it was rendered prior to the adjudicative period and

9  was based on a one-time examination.  *Id.*

10       The administrative record does not contain an opinion from Dr. Packer that

11  states Plaintiff is limited to a sedentary RFC.  On September 14, 2016, Dr. Packer

12  reviewed Shawn Nixon, M.D.'s examination and opinion, and provided an opinion

13  on Plaintiff's functioning.  Tr. 402-04.  Dr. Packer stated Plaintiff's "arthritis and

14  other arthropathies" has a severity rating of three, which is a "moderate" severity

15  rating.  Tr. 404, 406.  Dr. Packer opined Plaintiff has no environmental restrictions;

16  moderate postural restrictions and gross/fine motor skill restrictions; and he is

17  unable to determine the severity based on the evidence of the other nonexertional

18  limitations.  Tr. 403.  He further opined Plaintiff is able to perform light work.  *Id.*

19  The ALJ gave Dr. Packer's opinion little weight.  Tr. 24.  Plaintiff contends Dr.

20  Packer is an examining physician, ECF No. 19 at 10, however the record does not

ORDER - 13

1 contain an examination performed by Dr. Packer.  As Dr. Packer is a non-

2 examining source, the ALJ must consider the opinion and whether it is consistent

3 with other independent evidence in the record.  *See* 20 C.F.R. § 416.927(b),(c)(1);

4 *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Lester*, 81 F.3d at 830-

5 31.

6          The ALJ found Dr. Packer's opinion is based entirely on Dr. Nixon's report,

7 without any independent analysis.  Tr. 24.  The Social Security regulations "give

8 more weight to opinions that are explained than to those that are not."  *Holohan*,

9 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician,

10 including a treating physician, if that opinion is brief, conclusory and inadequately

11 supported by clinical findings."  *Bray*, 554 at 1228.  Dr. Packer completed a

12 checkbox form, one page of which he did not complete, and did not provide any

13 explanation for his opinion nor cite to any evidence to support his opinion.  Tr.

14 402-04.  Dr. Packer's opinion is based on Dr. Nixon's report, and restates Dr.

15 Nixon's opinion that Plaintiff is limited to light work.  Tr. 403, 407.  The ALJ gave

16 multiple reasons to reject Dr. Nixon's opinion, Tr. 24, which Plaintiff does not

17 challenge.  Moreover, the ALJ found Plaintiff more limited than Dr. Packer's light

18 rating, and included additional limitations.

19          While Plaintiff contends the ALJ erred in ignoring Dr. Packer's sedentary

20 opinion, Plaintiff points only to the disability determination explanations and does

ORDER - 14

not point to any other documentation of Dr. Packer's opinion. ECF No. 19 at 10, ECF No. 21 at 2-3. Despite the references in the disability determination explanations, there are no records in the file that contain the quote that Plaintiff's imaging would "support a sedentary RFC rating." The summary of Dr. Packer's opinion originated from a single decision maker (SDM), Tr. 77-78, and the summary appears to be inconsistent with Dr. Packer's opinion. An ALJ may not accord any weight to a non-physician SDM opinion. *Morgan v. Colvin*, 531 Fed. App'x 793, 794-95 (9th Cir. June 21, 2013) (unpublished) (citing Program Operations Manual System DI 24510.050). Plaintiff does not cite any case law that requires an ALJ to address an SDM's inaccurate summary of a medical opinion. Plaintiff is not entitled to remand on these grounds.

**C. Step-Three**

Plaintiff argues the ALJ erred by failing to analyze whether Plaintiff's fibromyalgia equaled Listing 14.09D. ECF No. 19 at 10-12. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.' "
*Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,
493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because
they automatically end the five-step inquiry, before residual functional capacity is
even considered." *Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed
criteria for disability, she will be found to be disabled.  20 C.F.R. §
416.920(a)(4)(iii).

    "To *meet* a listed impairment, a claimant must establish that he or she meets
each characteristic of a listed impairment relevant to his or her claim." *Tackett,*
180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a
listed impairment, a claimant must establish symptoms, signs and laboratory
findings 'at least equal in severity and duration' to the characteristics of a relevant
listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting
20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from
multiple impairments and none of them individually meets or equals a listed
impairment, the collective symptoms, signs and laboratory findings of all of the
claimant's impairments will be evaluated to determine whether they meet or equal
the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099.
However, " '[m]edical equivalence must be based on medical findings," and "[a]
generalized assertion of functional problems is not enough to establish disability at

ORDER - 16

step three.' "  *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. §

416.926(a),

The claimant bears the burden of establishing his impairment (or

combination of impairments) meets or equals the criteria of a listed impairments.

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

articulation of the reason(s) why the individual is or is not disabled at a later step in

the sequential evaluation process will provide rationale that is sufficient for a

subsequent reviewer or court to determine the basis for the finding about medical

equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

*4 (effective March 27, 2017).

Here, the ALJ found Plaintiff's impairments did not meet or equal a listing.

Tr. 19-20.  While Plaintiff contends the ALJ erred in failing to address whether his

fibromyalgia equals a listing, ECF No. 19 at 10-12, Plaintiff failed to challenge the

ALJ's finding that fibromyalgia is not a severe medically determinable

impairment, Tr. 18-19.  Thus, any challenge to the ALJ's step two findings is

waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th

Cir. 2008) (determining Court may decline to address on the merits issues not

argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the

Court may not consider on appeal issues not "specifically and distinctly argued" in

the party's opening brief).

ORDER - 17

1    Further, Plaintiff has not presented any argument as to how his fibromyalgia

2    symptoms are equal in severity to Listing 14.09D.  Listing 14.09D requires

3    repeated manifestations of inflammatory arthritis, with at least two of the

4    constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary

5    weight loss) and one of the following at the marked level: 1) Limitation of

6    activities of daily living; 2) Limitation in maintaining social functioning; or 3)

7    Limitation in completing tasks in a timely manner due to deficiencies in

8    concentration, persistence, or pace.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing

9    14.09D.  Plaintiff does not present any argument as to how he has had repeated

10    manifestations of fibromyalgia symptoms that cause at least one of the listed

11    marked limitations.  Plaintiff did not mention fibromyalgia at his hearing, Tr. 32-

12    55, Dr. Nixon's September 2016 physical examination did not mention

13    fibromyalgia, Tr. 404, and Plaintiff did not report fibromyalgia symptoms at his

14    June 2015 nor April 2017 psychological examinations although he reported

15    multiple other physical complaints, Tr. 347-54, 480-84.  Plaintiff has not met his

16    burden in demonstrating his impairment is equal in severity to Listing 14.09D.

17    Plaintiff further argues the ALJ erred by not developing the record;

18    specifically, Plaintiff contends the ALJ should have called on a medical expert to

19    develop the record, resolve any conflicts/ambiguities, and provide an opinion on

20    whether Plaintiff meets/equals a listing and his RFC.  The ALJ has an independent

duty to fully and fairly develop a record in order to make a fair determination as to

disability, even where, as here, the claimant is represented by counsel. *Celaya v.*

*Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan*, 242 F.3d at

1150; *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). "Ambiguous evidence,

or the ALJ's own finding that the record is inadequate to allow for proper

evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d

1273, 1288 (9th Cir. 1996)). However, Plaintiff does not point to any ambiguous

evidence or conflicts in the evidence requiring further development. Plaintiff is not

entitled to remand on these grounds.

**D. Lay Witness Evidence**

Plaintiff challenges the ALJ's consideration of the lay witness statement of

Plaintiff's wife, Deborah S. ECF No. 19 at 12-13. An ALJ must consider the

statement of lay witnesses in determining whether a claimant is disabled. *Stout v.*

*Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness

evidence cannot establish the existence of medically determinable impairments,

but lay witness evidence is "competent evidence" as to "how an impairment affects

[a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v.*

*Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a

position to observe a claimant's symptoms and daily activities are competent to

ORDER - 19

testify as to her condition.").  If a lay witness statement is rejected, the ALJ "'must

give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462,

1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Ms. S. completed a function report on February 24, 2017.  Tr. 205-12.  She

stated Plaintiff needs a lot of breaks when he works, has difficulties with sleep,

needs reminders to shave and shower, takes longer to dress than normal, helps with

chores, caring for pets, and cooking though it causes pain and he needs breaks, he

can drive, walk and go places alone, he grocery shops though slowly, he watches

television daily and went fishing during the summer, he can walk half of a block

before needing a ten to fifteen minute break, his medications do not cause any side

effects, he has limitations in postural activities, walking, sitting, completing tasks,

concentrating, following instructions, getting along with others, and using his

hands, but he also follow instructions well, can pay attention well, and gets along

with authority figures well.  *Id.*  The ALJ gave Ms. S.'s statement some weight.

Tr. 24.

First, the ALJ found Ms. S. confirmed many of Plaintiff's reported activities

and provided "little new information."  Tr. 24-25.  Where the ALJ gives clear and

convincing reasons to reject a claimant's testimony, and where a lay witness's

testimony is similar to the claimant's subjective complaints, the reasons given to

reject the claimant's testimony are also germane reasons to reject the lay witness

testimony.  *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness").  Ms. S. largely repeated statements made by Plaintiff, such as Plaintiff needing breaks, having sleep issues, and having problems walking more than half of a block.  Tr. 40-42, Tr. 205-07.  As the Court finds the ALJ gave clear and convincing reasons to reject Plaintiff's symptom claims for the reasons discussed *supra*, the ALJ also gave germane reasons to reject the lay witness testimony.

Second, the ALJ found Ms. S. is not an impartial medical source.  Tr. 25. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value."  *Smolen*, 80 F.3d at 1289 (internal citations omitted).  While the ALJ may not reject Ms. S.' statement solely because she is not an impartial source, any error is harmless as the ALJ gave other germane reasons to reject her statement.  *See Molina,* 674 F.3d at 1115.  Plaintiff is not entitled to remand on these grounds.

**E. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 19 at 13-17.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 22

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3    duration, frequency, and intensity of pain or other symptoms; 3) factors that

4    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; 5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; 6) any measures other than treatment

8    an individual uses or has used to relieve pain or other symptoms; and 7) any other

9    factors concerning an individual's functional limitations and restrictions due to

10    pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

11    416.929(c).  The ALJ is instructed to "consider all of the evidence in an

12    individual's record," to "determine how symptoms limit ability to perform work-

13    related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14    The ALJ found that Plaintiff's medically determinable impairments could

15    reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16    statements concerning the intensity, persistence, and limiting effects of his

17    symptoms were not entirely consistent with the evidence.  Tr. 21.

18    *1. Improvement with Treatment*

19    The ALJ found Plaintiff's symptom claims were inconsistent with his

20    improvement with treatment.  Tr. 21-23.  The effectiveness of treatment is a

ORDER - 23

relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006) (determining that conditions effectively controlled with medication

are not disabling for purposes of determining eligibility for benefits); *Tommasetti*

*v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations).

First, the ALJ noted that Plaintiff's back and neck pains appeared to improve

by the relevant period.  Tr. 21-22.  While Plaintiff complained of back and neck

pain prior to relevant adjudicative period, and Plaintiff used opioids to treat his

pain prior to the relevant period, Plaintiff discontinued opioids by the end of 2015

and continued only with tramadol and gabapentin.  Tr. 21 (citing Tr. 358).  The

ALJ found Plaintiff's back impairment appeared to be stable by his application

date, as demonstrated by imaging and examinations.  Tr. 22 (citing Tr. 360, 399,

768-69, 773).  Plaintiff's provider suggested he try low-impact exercise and swim

therapy, and he was found to not be a candidate for injection treatment.  Tr. 769.

Plaintiff's back impairment was described as not warranting surgical intervention,

and Plaintiff reported in January 2018 that his back and neck pain was stable.  Tr.

22 (citing Tr. 916, 932).

ORDER - 24

Second, Plaintiff's hernia surgery occurred prior to the application date and appeared to be successful.  Tr. 22 (citing Tr. 369, 371).  Plaintiff had a laparoscopic hernia repair in February 2016.  Tr. 22 (citing Tr. 374).  During his visits with his primary care in 2016, Plaintiff did not mention any post-surgical complaints.  Tr. 22 (citing Tr. 380-83).  While Plaintiff argues the ALJ did not find Plaintiff had improvement over time, ECF No. 19 at 14-15, the ALJ set forth an analysis of Plaintiff's improvement as discussed herein.  On this record, the ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 2.  Activities of Daily Living

The ALJ found Plaintiff's symptom claims were inconsistent with his activities of daily living.  Tr. 22-23.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that

ORDER - 25

1  are transferable to a work setting" or when activities "contradict claims of a totally

2  debilitating impairment." *Molina*, 674 F.3d at 1112-13.

3      The ALJ noted Plaintiff reported ongoing involvement in construction work

4  for friends in September 2016.  Tr. 22 (citing Tr. 393-94).  Plaintiff reported

5  continuing to fish, and described his only difficulty was casting, but did not report

6  difficulty sitting.  Tr. 23 (citing Tr. 348).  Plaintiff has reported being independent

7  in most of his personal care, cleaning, and other household chores, though he needs

8  to take breaks, and he reported being able to drive and go shopping with his wife

9  without the use of an electric chair in the store during store trips that take an hour,

10  though he needs to walk slow and to go to the car if he is in too much pain.  Tr.

11  216, 349.  He also reported caring for pets, helping prepare meals, and watching

12  television.  Tr. 214.  Plaintiff argues his activities are not inconsistent with his

13  allegations, and that the ALJ erroneously stated Ms. S. confirmed Plaintiff fished,

14  and pointed to Ms. S.' report that Plaintiff does not fish anymore, ECF No. 19 at

15  15-16, Tr. 210.  However, Ms. S. also stated Plaintiff fished in the summer, Tr.

16  209.  Plaintiff argues there is no evidence of ongoing construction work because

17  the cited reference to the work was one month prior to the application for benefits,

18  ECF No. 19 at 15, however Plaintiff alleged disability beginning September 21,

19  2015, yet Plaintiff reported "working hard on his feet for the past couple of weeks"

20  and working at least four to six hours per day in June 2016, Tr. 831, and he then

ORDER - 26

reported performing construction work for family in friends in September 2016, Tr. 835.  Plaintiff's activities, particularly his ability to engage in construction work after his alleged onset date, demonstrates a higher level of functioning than alleged.  On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with his activities of daily living.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 3.  Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 21-23.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ found that Plaintiff's reported symptoms were not as severe as he claimed.  Tr. 21-23.  First, the ALJ found the objective evidence did not support

ORDER - 27

Plaintiff's reported severity of his back impairment.  Tr. 21-22.  Plaintiff stopped

taking opioids for his back pain prior to the relevant period.  Tr. 21 (citing Tr.

358).  Imaging showed his back impairment was stable.  Tr. 22 (citing Tr. 399).

Although Plaintiff had some abnormalities on examination in October, including

limited range of motion due to pain, the provider noted Plaintiff exhibited

overreaction with multiple Waddell signs.  Tr. 22 (citing Tr. 768-69).  In

September 2016, an examination demonstrated Plaintiff had normal strength and

reflexes and a negative straight leg raise, he had improved range of motion when

distracted, and the provider noted that Plaintiff's chronic pain lacked many

objective findings.  Tr. 22, 836-37.  In April 2017, Plaintiff continued to complain

of back pain and muscle spasms and had decreased range of motion, but remained

off narcotics, and had normal strength, reflexes, and gait.  Tr. 22 (citing Tr. 855).

In August 2018, Plaintiff's back impairment was described by a provider as

nothing that would warrant surgical intervention.  Tr. 932.  While Plaintiff alleges

an inability to sit longer than 20 to 25 minutes, the ALJ noted there are no

complaints in the medical records about such limitations during the relevant time

period.  Tr. 22.

Second, while Plaintiff alleges disability in part due to a hernia, Tr. 199, the

ALJ found Plaintiff's hernia was resolved through surgery.  Tr. 22.  Plaintiff had a

laparoscopic hernia repair in February 2016, *Id.* (citing Tr. 374), and did not

complain of any issues at his port-surgery appointments, Tr. 22 (citing Tr. 380-83).

Third, the ALJ found the objective evidence was inconsistent with Plaintiff's

allegations of limitations due to neck pain.  Tr. 22.  While Plaintiff complained of

neck pain in September 2016, he moved his neck and shoulders rapidly and with

fairly good range of motion when distracted, but demonstrated significant pain

behavior during testing.  Tr. 393-94.  Plaintiff's December 2016 cervical imaging

showed only mild findings.  Tr. 471.  Third, the ALJ found Plaintiff's allegations

of limitations due to mental impairments was not supported by the objective

evidence.  Tr. 23.  The ALJ noted Plaintiff did not receive any regular formal

mental health treatment.  Tr. 23.  At both consultative examinations, Plaintiff was

not diagnosed with any conditions except cannabis use and alcohol use disorders.

Tr. 23 (citing Tr. 347-54, 480-84).  While Plaintiff offers an alternative

interpretation of the evidence, the ALJ reasonably concluded that the objective

medical evidence is not consistent with Plaintiff's complaints of disabling

symptoms.  This finding is supported by substantial evidence and was a clear and

convincing reason, along with the other reasons offered, to discount Plaintiff's

symptoms complaints.

### 4. *Lack of Mental Health Treatment*

The ALJ found Plaintiff's symptom claims were inconsistent with his lack of

mental health treatment.  Tr. 23.  An unexplained, or inadequately explained,

failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment).

Although Plaintiff alleges disability in part due to depression and anxiety, Tr. 199, the ALJ found Plaintiff has not received any formal ongoing mental health treatment. Tr. 23. Plaintiff did not seek counseling, nor did he require emergency intervention or inpatient treatment for psychiatric symptoms. *Id.* Plaintiff does not offer any explanation for his lack of mental health treatment. On this record, the ALJ reasonably concluded that Plaintiff's lack of mental health treatment is not consistent with Plaintiff's complaints of disabling symptoms. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints. Plaintiff is not entitled to remand on these grounds.

**F. Step-Five**

Plaintiff argues the ALJ erred at step five. ECF No. 19 at 17-18. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to

ORDER - 30

establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook*, 240 F.3d at 1165. The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973

(9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions

presented in a hypothetical question propounded by a claimant's counsel if they are

not supported by substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756-

57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A

claimant fails to establish that a step five determination is flawed by simply

restating argument that the ALJ improperly discounted certain evidence, when the

record demonstrates the evidence was properly rejected.  *Stubbs-Danielson*, 539

F.3d at 1175-76.

Plaintiff's argument is based entirely on the assumption that the ALJ erred in

considering the opinion evidence and Plaintiff's symptom claims.  For reasons

discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom

claims and consideration of the lay and medical opinion evidence are legally

sufficient and supported by substantial evidence.  Thus, the ALJ did not err in

assessing the RFC or finding Plaintiff capable of performing work existing in the

national economy.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

ORDER - 32

1    2. Defendant's Motion for Summary Judgment, **ECF No.20,** is **GRANTED**.

2    3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

3    The District Court Executive is directed to file this Order, provide copies to

4    counsel, and **CLOSE THE FILE**.

5    DATED December 9, 2020.

6                              _s/Mary K. Dimke_
                              MARY K. DIMKE
7                    UNITED STATES MAGISTRATE JUDGE

ORDER - 33